[Cite as *State v. Harris*, 2017-Ohio-8263.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 16CA0054-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MATTHEW J. HARRIS | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 15 CR 0267 |

DECISION AND JOURNAL ENTRY

Dated: October 23, 2017

SCHAFER, Judge.

{¶1} Defendant-Appellant, Matthew J. Harris, appeals his convictions and sentence in the Medina County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

{¶2} On May 21, 2015, the Medina County Grand Jury indicted Harris on two counts of aggravated arson in violation of R.C. 2909.02(A)(1), both felonies of the first degree. Harris initially pleaded not guilty at his arraignment, but he subsequently filed a written plea of not guilty by reason of insanity. The trial court thereafter referred Harris to the Akron Psycho-Diagnostic Clinic for competency and sanity evaluations. Dr. Michael Biscaro of the Akron Psycho-Diagnostic Clinic ultimately determined that Harris was competent to stand trial and that Harris understood the wrongfulness of his actions at the time of the alleged offense. The State and Harris' defense counsel both stipulated to the authenticity and admissibility of the competency evaluation. The trial court thereafter granted Harris' motion to receive an

independent forensic psychiatric evaluation. Harris subsequently filed the expert sanity evaluation report of Dr. Galit Askenazi. The trial court then permitted Dr. Biscaro to supplement the sanity evaluation that he previously prepared in this matter. Dr. Biscaro again determined that Harris knew the wrongfulness of his actions at the time of the alleged offense. The matter then proceeded to a jury trial.

{¶3} At trial, the State presented five witnesses to testify on its behalf. At the close of the State's case-in-chief, Harris made a general Crim.R. 29 motion for judgment of acquittal, which the trial court summarily denied. Harris then called two witnesses to testify on his behalf prior to resting his case. The jury deliberated and ultimately found Harris guilty of both counts contained in the indictment. As to both counts, the jury found that Harris did have a severe mental disease or defect at the time of the offense, but that he did know the wrongfulness of his actions. The trial court subsequently sentenced Harris to five years in prison on each count of aggravated arson and ordered Harris to serve those sentences concurrently. The trial court also sentenced Harris to a mandatory five-year term of post-release control.

{¶4} Harris filed this timely appeal and presents three assignments of error for our review.

II.

**Assignment of Error I**

**The State failed to present sufficient evidence to sustain a conviction against Appellant.**

{¶5} In his first assignment of error, Harris argues that his convictions for aggravated arson are unsupported by sufficient evidence. We disagree.

{¶6} "'We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'" *State v. Smith*, 9th Dist. Summit No. 27389,

2015-Ohio-2842, ¶ 17, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "Circumstantial evidence and direct evidence inherently possess the same probative value." *Id.* at paragraph one of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus. Although we conduct de novo review when considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775 , ¶ 33.

{¶7} This matter implicates Harris' convictions for two counts of aggravated arson in violation of R.C. 2909.02(A)(1), which states that "[n]o person, by means of fire or explosion, shall knowingly * * * [c]reate a substantial risk of serious physical harm to any person other than the offender[.]" "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). Proof of intent is often derived from circumstantial evidence, as direct evidence will seldom be available. *State v. Tarver*, 9th Dist. Summit No. 22057, 2004-Ohio-6748, ¶ 10, citing *State v. Lott*, 51 Ohio St.3d 160, 168 (1990). A "substantial risk" is

defined in R.C. 2901.01(A)(8) as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." Lastly, pursuant to R.C. 2901.01(A)(5), "serious physical harm to persons" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
(b) Any physical harm that carries a substantial risk of death;
(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶8} Here, Harris does not contest that the State met its burden of production with respect to any of the elements contained in R.C. 2909.02(A)(1). Rather, Harris argues that the State's evidence at trial was insufficient in light of his not guilty by reason of insanity defense. Nonetheless, in the interest of context, we elect to examine the evidence that the State presented at trial.

{¶9} Robert Locher testified that he was working as a Lafayette Township police officer on February 21, 2015, when he responded to a report of a house fire on Bank Street in Lodi, Ohio. Officer Locher testified that he was the first person to arrive at the scene, where he noticed smoke emanating from a third story window. He stated that he observed that the front door to the house was open and that an elderly woman in a wheelchair was located inside about five or six feet from the front door. This elderly woman was ultimately identified as Barbara Harris. Officer Locher testified that he noticed "thick, black" smoke between the woman and the door. Officer Locher testified that he quickly removed the woman from the house by wheeling

her out onto the front porch. He also testified that when the fire department arrived on the scene, two or three firefighters entered the house and subsequently removed Mrs. Harris' son, Matthew Harris, from the structure.

{¶10} Dr. Ricardo Machado, the emergency treating physician at Lodi Community Hospital who treated Matthew Harris on the day in question, testified that Harris admitted to starting the fire. Moreover, Lieutenant Matthew Buca of the Village of Lodi Fire Department testified that upon arriving on the scene and learning that Matthew Harris was probably still in the house, he and another firefighter "went into search and rescue mode." Specifically, Lieutenant Buca testified that the front door to the house had somehow shut and locked since Barbara Harris was safely evacuated from the burning house. Thus, Lieutenant Buca testified that the front door had to be kicked in and a fire in the living room had to be "quickly knocked down" before he proceeded upstairs. Lieutenant Buca then testified that, through dark smoke, he was able to locate Harris lying on a bed in one of the rooms. He testified that Harris was alert when he located him, but that he did not speak during their encounter. Lieutenant Buca stated that he picked Harris up and carried him downstairs and out of the house, where Harris then received medical attention. Lieutenant Buca testified that the firefighters would not have entered the house if Harris was not still inside upon their arrival. He also testified that Mrs. Harris may have died if she was not removed from the house during the fire. Lastly, Lieutenant Buca testified that the fire caused a substantial risk of physical harm to him and the other firefighters who entered the house to combat the fire.

{¶11} Brian Peterman, a fire investigator with the Ohio Fire Marshal's Office, testified that he investigated the house fire on Bank Street in Lodi, Ohio on the same day that the fire occurred. Mr. Peterman testified that upon inspecting the house, he determined that the fire

originated at three separate and distinct locations within the house. Mr. Peterman testified that this led him to conclude that the fire was not caused by accident, but was started intentionally. Mr. Peterman testified that one fire was started in the living room using a robe or towel as the combustible material, another fire was started on the kitchen table using mail and papers as the combustible material, and the third fire was started in the attic using papers and cardboard boxes as the combustible material. Mr. Peterman then testified that he interviewed Harris in the hospital on February 25, 2015, at which time Harris admitted to starting the fires in the living room and the kitchen. Mr. Peterman stated that Harris denied starting the fire in the attic, but admitted to starting a fire in his bedroom. Mr. Peterman stated that Harris admitted to drinking alcoholic beverages and smoking marijuana prior to starting the fires. Mr. Peterman also stated that Harris admitted to starting the fires because he "couldn't deal with everything in his life" and he wanted to die. Mr. Peterman testified that Harris' interview did not conflict with the physical evidence. Lastly, Mr. Peterman testified that the house fire started by Harris caused a substantial risk of serious physical harm both to Mrs. Harris and to the firefighters who arrived on scene to extinguish the blaze.

{¶12} As noted above, Harris does not contend that this evidence was insufficient with respect to any of the elements contained in R.C. 2909.02(A)(1). Instead, Harris argues that the State's evidence was insufficient in light of his not guilty by reason of insanity defense. However, because "'[t]he defendant's sanity is not an element' of a criminal offense," "the State need not prove 'that the defendant was sane. To the contrary, insanity is an affirmative defense.' The due process-based 'sufficient evidence' standard does not implicate affirmative defenses." *State v. Cochran*, 2d Dist. Montgomery No. 27023, 2017-Ohio-216, ¶ 51, quoting *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 35, 37. The evidentiary support for Harris' not

guilty by reason of insanity defense is more properly analyzed under the manifest weight of the evidence standard. *See id.*; *see also Hancock* at ¶ 37-38 (adopting the United States Court of Appeals for the Sixth Circuit's analysis in *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir.1999), abrogated on other grounds by statute, which held that the sufficiency of the evidence standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), does not apply to affirmative defenses). Thus, on this basis alone, we overrule Harris' first assignment of error.

{¶13} Therefore, Harris' first assignment of error is overruled.

### Assignment of Error II

**Appellant's convictions are against the manifest weight of the evidence.**

{¶14} In his second assignment of error, Harris argues that his convictions for aggravated arson are against the manifest weight of the evidence because he was insane at the time of the crime. We disagree.

{¶15} A manifest weight challenge is legally distinct from a sufficiency of the evidence challenge. *Thompkins*, 78 Ohio St.3d at 387. When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A criminal defendant who pleads not guilty by reason of insanity must prove by a preponderance of the evidence "that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or

defect, the wrongfulness of the person's acts." R.C. 2901.01(A)(14); R.C. 2901.05(A). "'The weight to be given the evidence and the credibility of the witnesses concerning the establishment of the defense of insanity in a criminal proceeding are primarily for the trier of the facts.'" *State v. Armstrong*, 152 Ohio App.3d 579, 2003-Ohio-2154, ¶ 17 (9th Dist.), quoting *State v. Thomas*, 70 Ohio St.2d 79, syllabus (1982).

{¶16} At trial, two experts testified with respect to Harris' sanity at the time of the offense. Harris, with whom the burden of proof rested on the issue, called Dr. Galit Askenazi, Ph.D., a board certified clinical neuropsychologist and forensic psychologist who formerly performed consulting work with the Akron Psycho-Diagnostic Clinic. The State called Dr. Michael Biscaro, Ph.D., a board certified forensic psychologist at the Louis Stokes Cleveland Veterans Affairs Medical Center who has performed consulting work with the Akron Psycho-Diagnostic Clinic since 2006.

{¶17} Dr. Biscaro testified that the Akron Psycho-Diagnostic Clinic asked him to conduct a competency and sanity evaluation on Harris on August 19, 2015. He testified that he interviewed Harris for one hour and thirty minutes at the Medina County Jail. Dr. Biscaro explained his methodology for determining an individual's sanity, which is to collect information about the individual and conduct a comprehensive evaluation. This process includes doing a clinical interview with the individual, conducting any tests that may be necessary, and reviewing collateral records, such as prior evaluations. Dr. Biscaro noted that he "had the advantage, in this particular case, of having seen Mr. Harris before, so [he] was looking at [his] own report and things of that nature." Dr. Biscaro stated that when he met with Harris in August of 2015, he "completed an interview with him, asked him for an update of his history, asked him about what

was going on at the time of the events with him." He stated that he then reviewed Harris' records "and went on from there."

{¶18} Dr. Biscaro proceeded to discuss his lengthy history of treating Harris. Specifically, Dr. Biscaro testified that he diagnosed Harris in 2010 with substance-induced psychotic disorder and personality disorder. He noted that Harris has a long history of being diagnosed with a number of different mental illnesses, including bipolar disorder, schizophrenia, schizoaffective disorder, dysthymia, major depressive disorder, and an unspecified disorder. He added that Harris has a "long history of substance addiction," including alcohol, marijuana, and heroin, and "also a long history of interpersonal issues, problems getting along with folks, family." Dr. Biscaro also stated that Harris is known for being manipulative and irresponsible.

{¶19} Next, Dr. Biscaro detailed a number of inconsistencies between what Harris told him during the August 2015 interview versus what he had told other individuals regarding the house fire. For example, Dr. Biscaro stated that Harris was inconsistent about whether voices told him to start the house fire, about what time of day he abused marijuana and alcohol prior to setting the house fire, about how many fires he started in the house, about whether he intentionally or accidentally started the fires or if he even started the fires at all, about his motive for starting the house fire, or if he ever thought about starting a house fire in the past. On each of these points, according to Dr. Biscaro, Harris' answers conflicted with prior statements that were contained in his medical records. Dr. Biscaro testified that such inconsistencies can be a "concerning and critical" and "an indicator of kind of an attempt to * * * avoid culpability or detection, that kind of stuff." Dr. Biscaro testified that avoidance of culpability is an indication that an individual knows that their actions are wrong and that there may be consequences for those actions.

{¶20} Dr. Biscaro also testified that he found no clear evidence that Harris experienced hallucinations that either told him to start the house fire or convinced him that setting the house on fire was not wrong. He stated that Harris was not experiencing symptoms of hallucinations telling him to start a house fire. Moreover, Dr. Biscaro noted that investigators documented that the house fire in this case was set in a deliberate and specific manner, but that individuals who do something because of a mental illness often act in an erratic and disorganized manner. Lastly, Dr. Biscaro testified that after interviewing Harris, reviewing Harris' numerous medical records, and reviewing the police and investigation reports in this case, he was of the opinion that Harris "was not suffering from symptoms of a severe mental disease at the time [of the crime], and that he did know the wrongfulness of his actions." Dr. Biscaro added that Harris does not suffer from a severe mental defect, does not have a traumatic brain injury, has no history of dementia, and is of average intelligence.

{¶21} Dr. Askenazi disagreed with much of Dr. Biscaro's testimony and with many of his findings. Specifically, after interviewing Harris and reviewing the same information that was available to Dr. Biscaro, Dr. Askenazi testified that she believes that Harris "was suffering from a severe mental disease – namely, schizoaffective disorder – [on the day in question], with active symptoms at that time." Dr. Askenazi further testified that she believes that Harris "was not able to thoughtfully determine what was right and what was wrong [on the day in question]. He just had to get rid of these voices [in his head]." We note that Dr. Biscaro testified that he reviewed Dr. Askenazi's written report, which detailed her findings and also critiqued his methodology in this case. Dr. Biscaro testified that Dr. Askenazi's report did not alter his opinion that Harris was sane on the day in question.

{¶22} Both Dr. Biscaro and Dr. Askenazi offered testimony with regard to their qualifications and experience. Accordingly, we cannot say that the evidence weighs heavily in favor of Dr. Askenazi's opinion, nor can we conclude that the jury lost its way by accepting Dr. Biscaro's expert opinion instead of Dr. Askenazi's. *See State v. Petrie*, 9th Dist. Summit No. 27490, 2016-Ohio-4941, ¶ 17 (stating that due to the conflicting testimony from expert psychologists, "the evidence in this case is balanced, and in these circumstances, we cannot say that this is the exceptional case in which we must reverse the conviction as against the manifest weight of the evidence."); *Armstrong*, 2003-Ohio-2154 at ¶ 17. Therefore, we disagree with Harris' contention that his convictions for aggravated arson are against the manifest weight of the evidence.

{¶23} Accordingly, Harris' second assignment of error is overruled.

### Assignment of Error III

**The trial court committed plain error by ordering convictions for separate counts because the trial court failed to make a proper determination as to whether those offenses are allied offenses pursuant to R.C. 2941.25 as they are part of the same transaction under R.C. 2929.14.**

{¶24} In his third assignment of error, Harris contends that the trial court erred by failing to merge his aggravated arson convictions at sentencing since they are allied offenses. We disagree.

{¶25} This Court generally applies a de novo standard of review when reviewing a trial court's decision regarding the merger of convictions for the purposes of sentencing. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1. However, because Harris failed to object to the trial court's decision not to merge his aggravated arson convictions at the sentencing hearing, he has forfeited all but plain error on appeal. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 3. The Supreme Court of Ohio has held that:

[A] forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. Accordingly, an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; and absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.

*Id*.

{¶26} "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple punishments for the same offense." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 23. R.C. 2941.25 states as follows:

(A) Where the same conduct by the defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶27} The Supreme Court of Ohio has held that two or more offenses may result in multiple convictions if: "(1) the offenses are dissimilar in import or significance – in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 25. The *Ruff* court stressed that this inquiry "is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id*. at ¶ 26. It is the defendant's burden to establish that the trial court failed to merge the sentences for allied offenses and that the defendant is entitled to the protection of R.C. 2941.25. *State v. Dembie*, 9th Dist. Lorain No. 14CA010527, 2015-Ohio-2888, ¶ 8.

**{¶28}** Upon review of the record, we cannot say that Harris has met his burden of demonstrating that there is a reasonable probability that his aggravated arson convictions are allied offenses. In refusing to merge Harris' convictions at the sentencing hearing, the trial court explicitly recognized that Harris' actions on the day in question caused a serious and separate danger to both Harris' mother and to the firemen who responded to the scene. Because offenses committed against different individuals are of dissimilar import under R.C. 2941.25(B), *see Ruff* at paragraph two of the syllabus, we conclude that the trial court did not plainly err when it declined to merge Harris' convictions for aggravated arson. *See Rogers* at ¶ 3-4.

**{¶29}** Harris' third assignment of error is overruled.

III.

**{¶30}** With all three of Harris' assignments of error having been overruled, the judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR

APPEARANCES:

THOMAS REIN, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.