[Cite as *State v. Hunter*, 2018-Ohio-568.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO

    Appellee

    v.

CHRISTOPHER HUNTER

    Appellant

C.A. No.    28484

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 2016 06 1937

DECISION AND JOURNAL ENTRY

Dated: February 14, 2018

TEODOSIO, Judge.

{¶1}    Appellant, Christopher Hunter, appeals from his convictions in the Summit County Court of Common Pleas.  We affirm.

I.

{¶2}    On the night of May 25, 2016, Mr. Hunter was drinking his second bottle of Hennessey and decided to go to the apartment of his ex-girlfriend ("D.C.").  Although uninvited, he knocked on the door while carrying a bottle of Hennessey and a loaded gun on his person. D.C.'s fiancé ("M.G.") answered the door while only wearing a pair of boxer shorts.  Mr. Hunter wanted to talk to D.C., but M.G. said that D.C. did not want to talk to him and closed the door. According to D.C., M.G. put on some clothes several minutes later and went outside to smoke a cigarette.  According to Mr. Hunter, M.G. came toward him with his hands in his pockets while looking reckless and biting his lip, so he shot M.G. in the neck.  M.G. fell down and then retreated back into the apartment.  Mr. Hunter followed M.G. into the apartment.  Once inside

the apartment, Mr. Hunter tried to shoot M.G. in the back, but the gun jammed, so he had to un-jam and reload it. Mr. Hunter resumed shooting at M.G. as he retreated down the hallway and then followed M.G. into the back bedroom to shoot him four more times, killing him. Overall, Mr. Hunter shot M.G. a grand total of ten times.

{¶3} After a jury trial, Mr. Hunter was found not guilty of aggravated murder and several other felonies, but guilty of murder and felonious assault with accompanying firearm specifications. The trial court denied Mr. Hunter's motion to merge the two convictions for sentencing and ultimately sentenced Mr. Hunter to an aggregate total of 29 years to life in prison.

{¶4} Mr. Hunter now appeals from his convictions and raises three assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S REQUESTED JURY INSTRUCTION REGARDING VOLUNTARY MANSLAUGHTER AS AN INFERIOR DEGREE OFFENSE TO MURDER.

{¶5} In his first assignment of error, Mr. Hunter argues that the trial court erred in denying his request for a jury instruction on voluntary manslaughter because his rage at the crime scene was compounded by fear, and thus his intent to kill was awakened in a sudden fit of passion. We disagree.

{¶6} "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. "[A] trial court must instruct the jury on a lesser[-]included offense if 'the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-

included offense.'"   *State v. Lockhart*, 9th Dist. Summit No. 28053, 2017-Ohio-914, ¶ 14, quoting *State v. Carter*, 89 Ohio St.3d 593, 600 (2000).  "In deciding whether to instruct the jury on a lesser-included or inferior-degree offense, the trial court must view the evidence in a light most favorable to the defendant."  *State v. Meadows*, 9th Dist. Summit No. 26549, 2013-Ohio-4271, ¶ 8.

{¶7}   This Court reviews a trial court's refusal to give a requested jury instruction for abuse of discretion.  *Id.* at ¶ 7.  "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court.  *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶8}   Murder requires an offender to "purposely cause the death of another * * *."  R.C. 2903.02(A).  Voluntary manslaughter requires an offender to knowingly cause the death of another while "under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force * * *."  R.C. 2903.03(A).  Because "its elements are * * * contained within the indicted offense, except for one or more additional mitigating elements[,]" voluntary manslaughter is not a lesser-included offense of murder.  *State v. Terrion*, 9th Dist. Summit No. 25368, 2011-Ohio-3800, ¶ 11, quoting *State v. Deem*, 40 Ohio St.3d 205, 209 (1988); *State v. Shane*, 63 Ohio St.3d 630, 632 (1992).  Instead, voluntary manslaughter is an inferior degree of murder.  *Terrion* at ¶ 11, citing *Shane* at 632.

> Even though voluntary manslaughter is not a lesser[-]included offense of murder, the test for whether a judge should give a jury an instruction on voluntary manslaughter when a defendant is charged with murder is the same test to be applied as when an instruction on a lesser[-]included offense is sought.

*Terrion* at ¶ 12, quoting *Shane* at 632. The instruction is warranted if the evidence presented at trial would reasonably support both an acquittal on murder and a conviction on voluntary manslaughter. *Terrion* at ¶ 12. However, an instruction on voluntary manslaughter is not required in every murder prosecution where "some evidence" exists that an offender satisfied the elements of voluntary manslaughter. *Shane* at 632. "A trial court need not give a voluntary manslaughter instruction if the evidence shows that a defendant had sufficient time to 'cool down' after being provoked." *State v. Little*, 9th Dist. Lorain No. 10CA009758, 2011-Ohio-768, ¶ 27, quoting *State v. Huertas*, 51 Ohio St.3d 22, 32 (1990).

{¶9} "Before giving a jury instruction on voluntary manslaughter in a murder case, the trial judge must determine whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." *Shane* at paragraph one of the syllabus. Both objective and subjective standards are used in the analysis of provocation. *Id.* at 634. First, an objective standard is used in determining whether the provocation was "reasonably sufficient to bring on sudden passion or a sudden fit of rage * * *." *Id.* If evidence of reasonably sufficient provocation does not exist, the inquiry ends and the trial court may not give an instruction on voluntary manslaughter. *Id.* "Provocation, to be reasonably sufficient, must be *serious*." (Emphasis sic.) *Id.* at 638. The provocation must also be reasonably sufficient to incite the offender to use deadly force. *Id.* at 635. If evidence of reasonably sufficient provocation does exist, a subjective standard is then used to determine "whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage." *Id.* at 634. "It is only at that point that the '[]emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time[]' must be considered." *Id.*, quoting *Deem* at paragraph five of the syllabus. "Fear alone is insufficient to demonstrate the

kind of emotional state necessary to constitute sudden passion or fit of rage." *State v. Mack*, 82 Ohio St.3d 198, 201 (1998).

{¶10} In the case sub judice, the record reflects that defense counsel requested a jury instruction regarding voluntary manslaughter as a lesser-included offense to aggravated murder or murder. The State opposed the instruction and the trial court denied Mr. Hunter's request to give the instruction to the jury. The court stated that, even when considered in a light most favorable to Mr. Hunter, there was not enough evidence of provocation to require the instruction. Moreover, the court stated that even if there was sufficient provocation, the fact that Mr. Hunter took the time to un-jam the weapon and reload it "sort of strip[ped] the sudden fit of rage or passion" and provided time in between to cool off, even if it was only for a few seconds, which was enough to not require an instruction on voluntary manslaughter in this case. The court noted defense counsel's objection for the record.

{¶11} At trial, Mr. Hunter testified that he went back out to his car after M.G. closed the apartment door on him. D.C. testified that M.G. put some clothes on several minutes later and went outside to smoke a cigarette. Mr. Hunter testified that M.G. came outside and was "looking reckless" and "biting his bottom lip" while coming toward Mr. Hunter with his hands in his pockets, which scared Mr. Hunter. He admitted on cross-examination that M.G. did not draw a weapon. When M.G. was about an arm's length away, Mr. Hunter shot him in the neck. M.G. fell down and then retreated toward the apartment. On cross-examination, the prosecutor asked Mr. Hunter if he agreed that, at that moment, he had a choice to leave the scene and just let M.G. go. Mr. Hunter replied, "Yes."

{¶12} Mr. Hunter testified that he instead chose to follow M.G. into the apartment and then shot him in the back because he was "still mad and scared." According to Mr. Hunter, the

gun jammed "[a]round the second shot * * * [i]n the house." Mr. Hunter removed the jammed bullet from the gun and reloaded the weapon. As M.G. staggered toward the back bedroom, Mr. Hunter resumed shooting at him several more times. Mr. Hunter then followed M.G. into the back bedroom and shot him four more times in the back because he was "still mad." He initially testified on cross-examination that he did not intend to kill M.G., but also testified that he purposely killed M.G. by repeatedly shooting him.

{¶13} The trial court stated that it did not find enough evidence of provocation to require a voluntary manslaughter instruction. Even assuming Mr. Hunter's version of the events is true and accurate, and M.G. did in fact come toward Mr. Hunter while "looking reckless" and "biting his bottom lip" with his hands in his pockets, we agree with the trial court's determination that these actions were not reasonably sufficient to bring on sudden passion or a sudden fit of rage. The evidence does not show these actions as being serious or reasonably sufficient to incite Mr. Hunter to use deadly force, as Mr. Hunter admitted that M.G. did not draw a weapon on him.

{¶14} Even if we were to assume arguendo that M.G.'s actions constituted reasonably sufficient provocation, we would nonetheless agree with the trial court's determination that Mr. Hunter was not under the influence of sudden passion or in a sudden fit of rage in this particular matter. After being shot in the neck, M.G. retreated into the apartment while bleeding. Mr. Hunter agreed at trial that he could have simply left the scene at that point, but he chose instead to follow M.G. into the apartment and continue shooting him. He even took some time around the second shot to un-jam and reload the gun, which provided him with sufficient time to "cool down" after the alleged provocation. *See Little* at ¶ 27 (stating a voluntary manslaughter instruction is not required if the evidence shows a sufficient time to "cool down" after being provoked.). After un-jamming and reloading the gun, Mr. Hunter resumed shooting at M.G.

down the hallway and then followed him into the back bedroom to shoot him several more times in the back. Mr. Hunter testified repeatedly that he was scared and mad, but again, "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *Mack*, 82 Ohio St.3d at 201.

{¶15} After a review of the record, we conclude that the trial court did not abuse its discretion in finding that the evidence presented at trial, even when considered in a light most favorable to Mr. Hunter, did not establish reasonably sufficient provocation to require a jury instruction on voluntary manslaughter.

{¶16} Accordingly, Mr. Hunter's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED IN FAILING TO MERGE THE CONVICTIONS
FOR MURDER AND FELONIOUS ASSAULT FOR SENTENCING.

{¶17} In his second assignment of error, Mr. Hunter argues that the trial court erred by failing to merge his felonious assault and murder convictions as allied offenses of similar import for the purposes of sentencing. We disagree.

{¶18} "This Court generally applies a de novo standard of review when reviewing a trial court's decision regarding the merger of convictions for the purposes of sentencing." *State v. Harris*, 9th Dist. Medina No. 16CA0054-M, 2017-Ohio-8263, ¶ 25, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1. "When applying the de novo standard of review, this Court gives no deference to the trial court's legal determinations." *State v. West*, 9th Dist. Lorain No. 04CA008554, 2005-Ohio-990, ¶ 33.

{¶19} "R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and [Article I, Section 10,] of the Ohio

Constitution, which prohibits multiple punishments for the same offense." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 23. R.C. 2941.25 provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶20}** The Supreme Court of Ohio clarified the standard for an analysis of allied offenses of similar import in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995. "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import." *Id.* at paragraph one of the syllabus. "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26. "Animus" has been defined as "purpose or, more properly, immediate motive." *State v. Logan*, 60 Ohio St.2d 126, 131 (1979). Multiple offenses are of dissimilar import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 26. Therefore, "courts must ask three questions when [a] defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?" *Ruff* at ¶ 31. "An affirmative answer to any of the above will permit separate convictions." *Id.* "It is the defendant's burden to establish his or her entitlement to the protections of Section 2941.25." *State v. Dembie*, 9th Dist. Lorain No. 14CA010527, 2015-Ohio-2888, ¶ 8. "'To do so, the defendant must show that the State relied upon the same conduct

to support both offenses.'" *State v. Fedrick*, 9th Dist. Summit No. 28120, 2017-Ohio-2635, ¶ 18, quoting *State v. Choate*, 9th Dist. Summit No. 27612, 2015-Ohio-4972, ¶ 19. *See also Logan* at 128.

{¶21} In the case sub judice, the trial court heard arguments from the parties as to the merger issue. The court ultimately determined that the felonious assault and murder convictions should not merge for sentencing purposes and found as follows:

> In this case, the [c]ourt finds that there was a sufficient passage of time from the initial attack that - - and the intention of the defendant to continue on with the attack interrupted by different events, both the fleeing of the defendant (sic) and the jamming of the gun, such that enough time passed that there was a separate animus pertinent to this case such that a felonious assault charge is not required to merge under all the statements of law as the [c]ourt has interpreted them.

{¶22} This Court addressed a factually similar situation in *State v. Dembie*, 2015-Ohio-2888. In *Dembie*, Mr. Dembie struggled with the victim as she attempted to escape out of a second-story, bathroom window. *Id.* at ¶ 9. While the victim was outside of the window, Dembie stabbed her in the abdomen and she fell to the ground below. *Id.* Dembie proceeded down the steps and outside to where the victim lay on the ground. *Id.* He then stabbed her repeatedly and cut her throat, killing her. *Id.* On appeal, this Court agreed with the trial court's determination that the convictions for felonious assault and murder were not allied offenses, as the victim's fall from the bathroom window "interrupted" the attack. *Id.* at ¶ 11. Although Dembie went downstairs and resumed attacking the victim moments later, the fall created a "distinct line of demarcation" between the felonious assault at the window and the murder on the ground. *Id.* Thus, we concluded that the felonious assault at the window carried a separate animus from the murder on the ground. *Id.*

{¶23} Mr. Hunter bears the burden of establishing his entitlement to a merger of these convictions for sentencing. *See id.* at ¶ 8. He argues that his testimony on cross-examination

that he purposely killed M.G. by repeatedly shooting him established a single animus for both the felonious assault and the murder, requiring merger of the two convictions for purposes of sentencing. Mr. Hunter attempts to distinguish the *Dembie* case from his own by emphasizing that there was no admission of intent to kill in *Dembie* and the trial court had to make its decision based upon inferences from the circumstances. However, Mr. Hunter's testimony during cross-examination was rather inconsistent and in fact contradictory regarding his intent while committing these crimes:

Q: And your intent was to kill him?

A: No, it wasn't.

Q: When you were shooting him eight, nine times, that wasn't your intent?

A: No.

Q: Okay. When you shot him in the neck, shot him in the back, that wasn't your intent, to kill him?

A: Yes.

Q: It was your intent to kill him, right?

A: Yes.

Q: That was your purpose when you pulled out the gun and shot him over and over again. Your intent was to end the life of [M.G.], right?

A: Yes.

Thus, Mr. Hunter surprisingly testified both that he *did* and *did not* intend to kill M.G. At the sentencing hearing, the trial court acknowledged Mr. Hunter's admission of his intent to kill and stated: "[T]hat's a factor that I'm considering as I'm considering whether or not felonious assault and murder merge."

{¶24} After reviewing the record, we agree with the trial court's determination that Mr. Hunter's attack on M.G. was interrupted by certain events over a sufficient passage of time, particularly the fleeing of the victim into the apartment and the jamming and reloading of the gun. We conclude that these interrupting events created a "distinct line of demarcation" between the felonious assault that was completed outside of the apartment and the subsequent murder that was completed inside of the apartment. *See Dembie* at ¶ 11; *see also State v. Wilson*, 2d Dist. Montgomery No. 22120, 2008-Ohio-4130, ¶ 43-44 (concluding that two felonious assaults and a murder were committed separately when Wilson struggled with and shot the victim, then shot him again in the back as the victim fled, then stood over him and shot him multiple times in the head); *State v. Hines*, 8th Dist. Cuyahoga No. 90125, 2008-Ohio-4236, ¶ 47 (finding separate and distinct offenses for felonious assault and attempted murder where Hines shot the victim in the stomach, attempted to continue shooting him but "the gun kept clicking and did not go off," and then followed him outside of the building while still attempting to shoot him); *State v. Andrews*, 8th Dist. Cuyahoga No. 93104, 2010-Ohio-3864, ¶ 46-48 (finding a "clear demarcation" between two felonious assaults, and thus no merger, when the initial assault occurred inside the house, but the victim fled outside and Andrews chased him and assaulted him again); *compare State v. Craig*, 4th Dist. Athens No. 15CA22, 2017-Ohio-4342, ¶ 26-28 (reversing the trial court's decision not to merge felonious assault and attempted murder because the evidence did not establish "a break in the continuum of events" or "a line of distinction" showing separate and distinct crimes).

{¶25} Accordingly, we conclude that the trial court did not err in determining that Mr. Hunter's convictions should not merge as allied offenses of similar import for sentencing

purposes because the evidence presented at trial established that Mr. Hunter committed the initial felonious assault separately and with a separate animus from the subsequent murder.

**{¶26}** Mr. Hunter's second assignment of error is overruled.

### ASSIGNMENT OF ERROR THREE

APPELLANT'S CONVICTION FOR FELONIOUS ASSAULT WAS AGAINST
THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶27}** In his third assignment of error, Mr. Hunter argues that his conviction for felonious assault was against the manifest weight of the evidence. We disagree.

**{¶28}** This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

**{¶29}** Mr. Hunter argues that his conviction for felonious assault is a manifest miscarriage of justice because he admitted his only animus was to kill M.G. and he did so in one continuous course of conduct.

{¶30} Mr. Hunter was convicted of felonious assault under R.C. 2903.11(A)(2), which states: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Physical harm to a person means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A deadly weapon is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A).

{¶31} At trial, Mr. Hunter testified that he brought a loaded gun with him to D.C.'s apartment. He testified that he was approached by M.G. outside of the apartment and then intentionally shot M.G. in the neck. He presented inconsistent testimony when he testified both that he *did* and *did not* intend to kill M.G. He also testified that he followed M.G. into the apartment and the gun jammed. Mr. Hunter had to un-jam and reload the gun before shooting M.G. several more times.

{¶32} "'[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.'" *State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "[T]he jury is free to believe or disbelieve any, or all, of the testimony from each witness." *Haydon* at ¶ 28. "[A]s the trier of fact, 'the [jury] is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30, quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993).

**{¶33}** Based on the evidence presented at trial, the jury was free to believe that Mr. Hunter knowingly caused physical harm to M.G. by shooting him in the neck outside of the apartment. We conclude that Mr. Hunter's argument that his felonious assault conviction is against the manifest weight of the evidence is without merit. This is also not an exceptional case where the evidence presented weighs heavily in favor of the appellant and against conviction. *See Thompkins* at 387.

**{¶34}** Mr. Hunter's third assignment of error is overruled.

### III.

**{¶35}** Mr. Hunter's first, second, and third assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

JEFFREY N. JAMES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.