JOURNAL ENTRY and OPINION
{¶ 1} A jury found appellant, Tasha Amison ("appellant"), guilty of murder and felonious assault for stabbing to death her boyfriend, Thomas Diggs ("Diggs"). The trial court sentenced appellant to a total of 15 years to life in prison. Appellant now appeals, raising four assignments of error.
 I. {¶ 2} We will first address appellant's third assignment of error, arguing that the verdict was against the manifest weight of the evidence. In particular, appellant argues that the jury clearly lost its way in finding that she did not stab Diggs under extreme provocation. Appellant's argument is without merit.
 {¶ 3} This court, in considering whether the verdict is against the manifest weight of the evidence, must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. The discretionary power to grant a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. This is not the exceptional case.
 {¶ 4} The evidence showed that in the early morning hours on September 24, 2004, appellant called 9-1-1, claiming that Diggs would not let her into the house, that he just got out of prison, and that he threatened her with a crowbar. Within minutes of her phone call, the police arrived at Diggs' house where they were approached by appellant. Appellant explained to the police that Diggs locked her out of the house and refused to open the door. She informed the police that she wanted to get into the house to get some rest, eat something, and retrieve her things.
 {¶ 5} After the police observed her driver's license and miscellaneous insurance papers she had in her car parked nearby, they confirmed that, in fact, appellant resided at Diggs' house. The police knocked on the screen door and, after some time, Diggs opened the wooden door and spoke with the police through the locked screen door. Diggs informed the police that he was tired of appellant coming and going from the house for extended periods of time and that he intended to put her items on the porch that day for her to pick up. The police informed Diggs, however, that because it was appellant's residence, he would have to let her into the house and proceed with a formal eviction to oust her from the house.
 {¶ 6} Diggs agreed to let appellant into the house to get some sleep and appellant appeared to be satisfied with that arrangement. At no time while the police were at the house did appellant tell the police that she was afraid or scared of Diggs or that Diggs threatened her. Appellant then went into the house.
 {¶ 7} The police stayed on the porch talking to Diggs' neighbor about an unrelated matter. Within seconds of appellant entering the house, the police heard a loud thud coming from inside the house. They knocked on the door and appellant answered with Diggs standing directly behind her. The lights were off in the living and dining rooms. The police went into the house and asked what happened. Appellant told the police that Diggs pushed her into the refrigerator and slammed the freezer door; however, when the police shone their flashlights in the room, they observed that Diggs' t-shirt was covered in blood. The police noticed that Diggs was bleeding from a single stab wound directly to his heart. In response to the question of what happened, Diggs replied that appellant was not going to use his electricity or gas because she did not pay any of the bills and appellant replied that she did not know what happened. Diggs then sat on the couch and rested his head back until EMS arrived to treat him.
 {¶ 8} At that point, the police arrested appellant for felonious assault and placed her in their car. Appellant's sister spoke to appellant through the car window and appellant told her that she did not do anything and that because there was no weapon, the police would not be able to charge her with anything. Diggs was taken to the hospital where he was later pronounced dead.
 {¶ 9} The detectives located a knife behind the couch at Diggs' house. It was stained with Diggs' blood and the size of the blade was consistent with Diggs' wound. As a result of Diggs' death, appellant was charged with two counts of murder and one count of felonious assault.
 {¶ 10} Although appellant contends that the jury should have found that she acted under extreme provocation that justified Diggs' death, the manifest weight of the evidence does not support such a finding. There was evidence that appellant and Diggs were arguing earlier in the day and that Diggs clearly did not want appellant in his house. Appellant returned to the house determined to get inside, but was locked out by Diggs. Appellant called the police and told them when they arrived that she wanted to get into the house. Absent from the record is any indication that appellant told the police that she was afraid of Diggs or that he threatened her. Instead, appellant appeared upset only because she could not get inside.
 {¶ 11} After appellant was permitted into the house, Diggs was stabbed to death. There was no one else in the house and the evidence produced at trial made clear that it was highly improbable that Diggs stabbed himself. Indeed the manifest weight of the evidence supports the jury's verdict of murder and felonious assault, as there was no evidence that appellant was provoked by Diggs. The jury did not lose its way in finding appellant guilty of murder, pursuant to R.C. 2903.02(B), and felonious assault, pursuant to R.C. 2903.11. Thus, appellant's third assignment of error is overruled.
 II. {¶ 12} Appellant argues, in her first assignment of error, that she was denied a fair trial when the trial court instructed the jury on the affirmative defense of voluntary manslaughter. In particular, she contends that the trial court erroneously referred to voluntary manslaughter as a "lesser-included offense" of murder. And despite the fact that she failed to object to this instruction at trial, she argues that it constitutes plain error. However, appellant's argument is without merit.
 {¶ 13} While it is true that voluntary manslaughter is not a lesser included offense of murder, but rather, an inferior degree of murder, the erroneous instruction does not amount to plain error. State v. Franklin, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶73, 776 N.E.2d 26. Here, there was no evidence adduced at trial that entitled appellant to a jury instruction on voluntary manslaughter. To have a jury instruction on voluntary manslaughter included, a jury must be able to reasonably find that Diggs had seriously provoked appellant and that serious provocation was reasonably sufficient to have incited her to use deadly force. Id. at ¶ 75.
 {¶ 14} There was only the allegation that Diggs had threatened appellant with a crowbar, which was expressly included on the 9-1-1 recording but not recalled by either police officer that arrived at Diggs' house. In addition, appellant never mentioned to the police at any time that Diggs threatened her or that she was afraid of him. Indeed, Diggs appeared calm and appellant seemed entirely satisfied that Diggs was letting her back into the house. Appellant's behavior would be atypical of a person who was threatened. Based on the evidence at trial, the jury could not reasonably have found that appellant was seriously provoked so as to justify stabbing Diggs. Therefore, the instruction, "while erroneously labeling voluntary manslaughter as a lesser included offense of murder, did not amount to plain error." Id. Regardless, appellant's first assignment of error is overruled because appellant could not be found to have committed voluntary manslaughter.
 III. {¶ 15} Appellant next argues in her second assignment of error that the trial court erred when it failed to allow her to elicit evidence regarding the victim's prior criminal record. In particular, she argues that she should have been able to cross-examine one of the state's witnesses on Diggs' past criminal history to show his propensity for violence. For instance, she asserts that the testimony that Diggs was a "good guy" opened the door for her to bring up Diggs' criminal past. Appellant's argument is without merit.
 {¶ 16} First, it is patently clear that Diggs was unavailable to testify because he was dead. Thus, Evid.R. 608 which provides for the specific instances to test the credibility of a witness, is inapplicable because Diggs was not a witness nor could his credibility be tested.
 {¶ 17} Second, the testimony that Diggs was a "good guy" was not in response to a specific question — it was simply volunteered by the state's witness. The state did not follow-up on the answer, but appellant, on cross-examination, attempted to question the witness on what he knew of Diggs' criminal past. Before the court sustained the objection by the state, the witness testified that he did not know but remembers Diggs telling him that he robbed a bank. The trial court properly sustained the objection to this testimony because the witness seemed to be very unclear as to specific instances of criminal conduct.
 {¶ 18} Finally, appellant presented no evidence to support her apparent theory that she knew of Diggs' criminal past and that her life was in danger to justify stabbing Diggs. The only evidence that can remotely be considered to refer to Diggs' criminal past is the 9-1-1 recording where she told the operator that Diggs just got out of prison after serving 21 years. That blanket statement, without more, is insufficient to support her theory that she acted justly. Thus, appellant's second assignment of error is overruled.
 1. "IV. {¶ 19} Finally, appellant argues that the trial court erred by imposing a maximum sentence in violation of the due process clause and in violation of her right to a jury trial. Appellant's arguments are without merit, as the trial court specifically found that she "committed the worst form of the offense, taking the life of another in this felonious assault" when it imposed its sentence. Further, as this court conclusively held, the imposition of the maximum sentence does not violate the appellant's right to a jury trial as construed in Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed.2d 403. State v. Lett, 161 Ohio App.3d 274, 2005-Ohio-2665, ¶ 25,829 N.E.2d 1281. Appellant's fourth assignment of error is overruled and appellant's conviction and sentence are affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., Concurs.
 Cooney, J., Concurs in Part and Dissents in Part with SeparateOpinion.
 CONCURRING AND DISSENTING OPINION