[Cite as *State v. Hawthorne*, 2020-Ohio-756.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO

    Plaintiff-Appellee

-vs-

CLASSIE NICOLE HAWTHORNE

    Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P. J.
Hon. John W. Wise, J.
Hon. Patricia A. Delaney, J.

Case No. 2019CA00055

O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. 2018CR00950 |
| JUDGMENT: | Reversed and Remanded |
| DATE OF JUDGMENT ENTRY: | March 2, 2020 |
| APPEARANCES: | |

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| JOHN D. FERRERO<br>PROSECUTING ATTORNEY<br>RONALD MARK CALDWELL<br>ASSISTANT PROSECUTOR<br>110 Central Plaza South, Suite 510<br>Canton, Ohio 44702-1413 | LAURA L. MILLS<br>PIERCE C. WALKER<br>MILLS, MILLS, FIELY & LUCAS, LLC<br>101 Central Plaza South<br>Suite1200<br>Canton, Ohio 44702 |

*Wise, J.*

{¶1} Appellant Classie Hawthorne appeals her conviction, in the Court of Common Pleas, Stark County, for voluntary manslaughter and other offenses. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2} On May 21, 2018, appellant fatally shot her estranged husband, Cleveland Hawthorne. She then left the scene of the shooting in southwest Canton and hid the weapon, a handgun, in some hedges near Aultman Hospital. However, she later returned to the scene.

{¶3} Just a few days before the shooting, appellant and her children had moved out of the marital residence, located on Concord Street S.W. in Canton. On Sunday evening, May 20, 2018, appellant and Cleveland exchanged several heated text messages, with Cleveland accusing appellant of pulling a gun on him three different times. Nonetheless, Cleveland said in one message that he wanted to meet with appellant.

{¶4} On the morning of May 21, 2018, appellant came to Cleveland's residence, sprayed charcoal lighter fluid onto his automobile, and lit it. This event was captured by one of Cleveland's home security cameras. Cleveland saw what had happened, and he yelled for someone to call the police as he stamped out the flames.

{¶5} Two of Cleveland's neighbors, Tammy M. and Rodney P., heard Cleveland yell. Appellant had left the area after lighting the fluid, so Cleveland decided to cope with the situation by asking Rodney to transport him to another location to retrieve his second vehicle, a pickup truck. Rodney and Cleveland left at about 10:30 AM to get the truck, and they returned about a half-hour later. Rodney then went to work.

{¶6} Despite the aforesaid incidents, appellant decided to get some fast food for Cleveland. The two then met at the Cedar School parking lot. Some of their encounter was recorded by a school security video camera. Cleveland got into appellant's Equinox, and the two sat there for a period of time. During this time, appellant got out of her SUV

and then got back inside. The two then went together in the Equinox back to Concord Street, pulling into a gravel parking lot on the property of the church next to Cleveland's house.

**{¶7}**   Appellant also exited, from the driver's side, armed with her .380 caliber Ruger semiautomatic handgun. Standing behind the opened door, appellant brought the handgun up and took aim at Cleveland, who stopped and turned to run away. Appellant fired one shot into Cleveland's chest, which penetrated his heart. Cleveland was able to run about thirty feet, but he collapsed and died a couple of minutes later. Tr. at 461-469, 550, 555.

**{¶8}**   Keith E., who lived next to the church, later testified that on the day of the shooting, he was trimming some weeds in his yard and heard what turned out to be appellant's SUV pull into the church parking lot. Keith at first thought the vehicle belonged to the church's pastor. Seeking to avoid a long interruption in his yard work, Keith went into his garage. He then heard a quick honk of the horn from the vehicle, and then nothing until after three minutes later. At that time, Keith heard a high agitated female voice say, "You done messed with the wrong bitch, mother fucker!" which was then followed by a gunshot. Keith then heard a shocked and surprised male voice say, "You shot me! Fuck!" Tr. at 243.  He then heard someone running on the gravel, and then falling.

**{¶9}**   Keith ran into his house to retrieve his gun, fearing that there had been a gang shooting. While getting his gun, Keith called 911.

**{¶10}** In the meantime, Tammy M., the aforementioned neighbor, was with her son when she heard a "bang" sound. Her son went to investigate, and when she heard him yell, she ran to the church parking lot area to assist. Although Cleveland died quickly,

Tammy at least noticed car keys lying next to Cleveland. These were later determined to belong to appellant's Equinox.

{¶11} One of appellant's friends, Rene B. came to the scene of the shooting. Responding police officers obtained Rene's assistance in convincing appellant to return to the scene. Appellant was subsequently taken into custody.

{¶12} Appellant was indicted on July 27, 2018 for felony murder (R.C. 2903.02(B)) with a firearm specification (R.C. 2941.145), felonious assault (R.C. 2903.11(A)(2)) with a firearm specification (R.C. 2941.145), and improperly handling firearms in a motor vehicle (R.C. 2923.16(B)).

{¶13} A jury trial commenced on January 22, 2019. Appellant's defense counsel initially pursued a battered woman syndrome defense, but she did not maintain same through the end of the case. In addition, among other things, appellant via counsel objected to the State's request for a voluntary-manslaughter instruction, but the trial court overruled her objection.

{¶14} The jury reached a verdict on January 30, 2019. Appellant was found not guilty of felony murder, but guilty of voluntary manslaughter and the remaining counts. A sentencing hearing was held on February 11, 2019, following which appellant was sentenced to a total of thirteen years in prison. The trial court issued its final judgment entry of sentencing on February 13, 2019.

{¶15} In the meantime, on February 6, 2019, appellant filed a post-conviction motion for a new trial regarding the offense of voluntary manslaughter. In her motion, appellant argued that the trial court had erred in instructing the jury on the inferior offense of voluntary manslaughter, contending this offense is not a lesser included offense or

inferior degree offense of the charged offense of felony murder (R.C. 2903.02(B)). The State responded in writing on February 22, 2019. Via a judgment entry issued on March 19, 2019, the trial court overruled appellant's motion for a new trial. Appellant then filed a motion for reconsideration of that ruling; however, the court overruled same on April 10, 2019.

{¶16} On April 10, 2019, appellant filed a notice of appeal, covering both the final sentencing entry and the denial of her motion for a new trial. She herein raises the following four Assignments of Error:

{¶17} "I. THE TRIAL COURT ERRED BY INSTRUCTING THE JURY ON THE INFERIOR DEGREE OFFENSE OF VOLUNTARY MANSLAUGHTER AS REQUESTED BY APPELLEE AND OVERRULING APPELLANT'S MOTION FOR A NEW TRIAL PURSUANT TO CRIMINAL RULE 33.

{¶18} "II. THE TRIAL COURT ERRED BY ADMISSION OF THE DVR VIDEO WHEN IT WAS THE PRODUCT OF AN ILLEGAL SEARCH AND WAS NOT AUTHENTICATED AT TRIAL.

{¶19} "III. THE TRIAL COURT ERRED BY PERMITTING SPECIAL AGENT VOLPE OF THE FBI TO READ TEXT MESSAGES INTO EVIDENCE IN OPEN COURT BETWEEN THE DEFENDANT AND CLEVELAND HAWTHORNE.

{¶20} "IV. THE TRIAL COURT ERRED IN NOT PERMITTING THE CRIMINAL HISTORY AND FBI INVESTIGATION OF CLEVELAND HAWTHORNE TO BE PRESENTED AT TRIAL."

I.

{¶21} In her First Assignment of Error, appellant contends the trial court erred by (1) instructing the jury on the inferior degree offense of voluntary manslaughter as requested by the State and (2) subsequently overruling appellant's motion for a new trial pursuant to Crim.R. 33. We agree on the first point.

{¶22} Section 10, Article I of the Ohio Constitution states: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury." This constitutional provision guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury. *State v. Thompson*, 8th Dist. Cuyahoga No. 85843, 2006-Ohio-3162, ¶ 14.

{¶23} The Ohio Supreme Court has explained that, under Crim.R. 31(C) and R.C. 2945.74, a jury may consider lesser unindicted offenses only if the evidence supports the lesser charge and the lesser charge falls into one of three groups. *State v. Deem,* 40 Ohio St.3d 205, 208 (1988). A jury may consider lesser unindicted crimes that are (1) a lesser-included offense of the crime charged, (2) an inferior degree of the crime charged, or (3) an attempt to commit the crime charged, if such an attempt is an offense at law. *State v. Davis*, 9th Dist. Summit No. 25826, 2012-Ohio-1440, ¶ 20, citing *Deem*, *infra*.

{¶24} Thus, under the circumstances of the present appeal, our analysis of whether or not the jury in appellant's case should have been instructed on the unindicted offense of voluntary manslaughter "begins by first determining whether the requested instruction falls within the statutory definition of a lesser included offense or inferior degree offense." *See State v. Ledbetter*, 2nd Dist. Greene No. 93-CA-54, 1994 WL 558996. However, the parties herein are not primarily focused on the question of whether voluntary

manslaughter is a lesser-included offense of felony murder.[1] Instead, we are tasked with determining whether voluntary manslaughter is an inferior degree offense of felony murder. An offense is an "inferior degree" of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional "mitigating elements" which will generally be presented in the defendant's case. *See State v. Booker*, 6th Dist. Lucas No. L-10-1140, 2013-Ohio-45, ¶ 20; *State v. Pennington*, 5th Dist. Guernsey No. 16CA14, 2017-Ohio-1423, ¶ 17.

**{¶25}** In the case *sub judice*, appellant was indicted *inter alia* on one count of felony murder, although she was ultimately found not guilty on said count. R.C. 2903.02(B) states as follows: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."

**{¶26}** In addition, at the request of the State, and over appellant's objection during the trial, the trial court instructed the jury on voluntary manslaughter, and appellant was ultimately convicted of committing this offense. R.C. 2903.03(A) states as follows: "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably

---

[1]   Our research indicates a number of Ohio appellate courts, in cases of felony murder under R.C. 2903.02(B), have cited or applied the general rule that voluntary manslaughter is not a lesser-included offense of murder. *See, e.g., State v. Shoecraft*, 2nd Dist. Montgomery No. 27860, 2018-Ohio-3920, ¶ 45; *State v. Cobb*, 5th Dist. Stark No. 2014CA00226, 2015-Ohio-2752, ¶ 12; *State v. Gray*, 12th Dist. Butler No. CA2010-03-064, 2011-Ohio-666, ¶ 33; *State v. Sandoval*, 9th Dist. Lorain No. 07CA009276, 2008-Ohio-4402, ¶ 10; *State v. Amison*, 8th Dist. Cuyahoga No. 86279, 2006-Ohio-560, ¶ 13.

sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy."

**{¶27}** Several observations are noteworthy in our present analysis. First, felony murder under R.C. 2903.02(B) omits the *mens rea* of "purposely" required for murder under R.C. 2903.02(A) (which appellant was not charged with in this case). *See State v. Franklin*, 10th Dist. Franklin No. 06AP-1154, 2008-Ohio-462, ¶ 24. The voluntary manslaughter *mens rea* requires that a defendant "knowingly" cause the death of another, but voluntary manslaughter also does not require the "purposeful" intent of murder under R.C. 2903.02(A). *See State v. Whatley*, 10th Dist. Franklin No. 95APA10-1375, 1996 WL 257462. Under Ohio criminal law, "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. ***." *See* R.C. 2901.22(B).

**{¶28}** Thus, in contrast to voluntary manslaughter, "[f]elony murder under R.C. 2903.02(B) is a strict-liability offense in the sense that if the offender acts with the culpable mental state of the underlying first or second degree felony of violence, proximately resulting in death, then he is also guilty of felony murder." *State v. Hypes*, 2nd Dist. Clark No. 2018-CA-110, 2019-Ohio-4096, f.n. 1. Otherwise, there is no independent *mens rea* component contained in the felony murder statute. *State v. Collins*, 7th Dist. Mahoning No. 16 MA 0045, 2017-Ohio-648, ¶ 8. As the Ohio Supreme Court has aptly summarized, in a felony murder prosecution, although intent to commit the predicate felony is required, intent to kill is not. *See State v. Nolan,* 141 Ohio St.3d 454, 2014-Ohio-4800, 25 N.E.3d 1016, ¶ 9.

**{¶29}** Accordingly, while the Ohio Supreme Court has clearly established that voluntary manslaughter is an inferior degree offense of purposeful murder (*see State v. Shane* (1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272), it has been recognized that "[v]oluntary manslaughter is not an inferior-degree offense to *felony* murder via felonious assault because its elements, except for the mitigating factor of rage provoked by the victim, are neither contained within nor identical to the elements of felony murder via felonious assault." *State v. Davis*, 9th Dist. Summit No. 25826, 2012-Ohio-1440, ¶ 23 (emphasis added).

**{¶30}** In its response, the State *inter alia* relies upon three Ohio Supreme Court cases for its proposition that voluntary manslaughter is an inferior degree offense of felony murder. *See* Appellee's Brief at 10, citing *State v. Tyler,* 50 Ohio St.3d 24, 36, 553 N.E.2d 576, 592 (1990); *State v. Deem,* 40 Ohio St.3d 205, 209, 533 N.E.2d 294, 298 (1988); *State v. Rhodes,* 63 Ohio St.3d 613, 617, 590 N.E.2d 261 (1992). However, a close review of the aforecited cases reveals that *Tyler* involved an indictment for *aggravated* murder (R.C. 2903.01), albeit with a felony-murder capital offense specification (R.C. 2929.04(A)(7)), *Deem* focused on a charge of felonious assault (R.C. 2903.11) with no fatality, and *Rhodes* addressed a general count of murder, under the more succinct version of R.C. 2903.02 as it existed in 1989. Moreover, based on the dates of these decisions, the State's reliance thereon is unpersuasive, as felony murder was not a crime in Ohio until 1998, when division (B) was added to R.C. 2903.02. *See State ex rel. Williams v. Sutula*, 147 Ohio St.3d 472, 2016-Ohio-7453, 67 N.E.3d 763, ¶ 4, citing Sub.H.B. No. 5.

**{¶31}** The State also references a number of more recent appellate decisions for its insistence that voluntary manslaughter is an inferior degree offense of felony murder. *See State v. Sekulic,* 5th Dist. Stark No. 2016CA00135, 2017-Ohio-4259, 92 N.E. 3d 234; *State v. Burkes,* 8th Dist. Cuyahoga No. 106412, 2018-Ohio-4854; *State v. Hunter,* 9th Dist. Summit No. 28484, 2018-Ohio-568, 107 N.E. 3d 647; *State v. Terrion,* 9th Dist. Summit No. 25368, 2011-Ohio-3800; *State v. Ortiz,* 5th Dist. Stark No. 2015CA00098, 2016-Ohio-354; and *State v. Linzy,* 5th Dist. Richland No. 2012 CA 33, 2013-Ohio-1129.

**{¶32}** However, the State's responsive argument in this regard is not persuasive. Of the aforesaid six cases, three (*Sekulic*, *Hunter*, and *Ortiz*) involved charges of aggravated murder (R.C. 2903.01) and/or purposeful murder (R.C. 2903.02(A)). Of the remaining three, *Burkes* involved a count of aggravated murder and a count of felony murder, but the Eighth District's analysis focused on the jury instruction for voluntary manslaughter in the context of the aggravated murder count. In *Terrion*, the defendant had been indicted on both purposeful murder (R.C. 2903.02(A)) and felony murder (R.C. 2903.02(B)). The defendant was ultimately sentenced for 15 years to life on the murder count (R.C. 2903.02(A)), and the felony murder count was merged. *Terrion* at ¶ 8. The voluntary manslaughter jury instruction issue was analyzed in that context. Finally, in *Linzy*, a Fifth District case, the defendant, charged with both purposeful murder and felony murder, had requested a jury instruction on voluntarily manslaughter, which the trial court did not give. We concluded the trial court had not erred in refusing to give the instruction, as we found that the evidence presented did not reasonably support both an acquittal on the "crime charged" (purposeful murder) and a conviction for voluntary manslaughter.

*Linzy* at ¶ 86. In sum, the elements of felony murder were not analyzed in any significant manner in either *Burkes*, *Terrion*, or *Linzy*.

**{¶33}** Accordingly, we find the rationale of the Ninth District in *Davis*, *supra*, applicable in the present case. The jury was improperly provided with the option of convicting appellant of knowingly killing Cleveland in a fit of rage or under the influence of passion, a crime for which she had not been indicted, particularly where the jury simultaneously acquitted her on the charge of killing Cleveland as a proximate result of her knowingly committing the crime of felonious assault. We therefore find merit in appellant's contention that the trial court erred as a matter of law by instructing the jury on voluntary manslaughter as a supposed inferior degree offense, where she had been indicted for felony murder under R.C. 2903.02(B).

**{¶34}** Appellant's First Assignment of Error is therefore sustained.[2]

## II., III., IV.

**{¶35}** We find the remainder of appellant's arguments set forth in her Second, Third, and Fourth Assignments of Error to be premature and/or moot based on our above conclusions. *See* App.R. 12(A).

---

[2] It is thus not necessary for this Court to address appellant's arguments in this assigned error regarding her motion for new trial.

**{¶36}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby reversed and remanded for a new trial.[3]

By: Wise, J.

Delaney, J., concurs.

Hoffman, P. J., concurs in part and dissents in part.

JWW/d 0113

---

[3]    An improper jury instruction normally requires that the matter be reversed and remanded for a new trial. *See State v. Warner*, 11th Dist. Portage No. 2008-P-0052, 2010-Ohio-4940, ¶ 69. *See, also, State v. Griffin*, 1st Dist. Hamilton No. C-070324, 175 Ohio App.3d 325, 2008-Ohio-702, 886 N.E.2d 921, ¶ 2; *State v. Baugus*, 3rd Dist. Union No. 14-85-22, 1986 WL 15046. In addition, Crim.R. 33(D) states as follows: "When a new trial is granted by the trial court, or when a new trial is awarded on appeal, the accused shall stand trial upon the charge or charges of which he was convicted."

*Hoffman, P.J., concurring in part and dissenting in part*

**{¶37}** I fully concur in the majority's analysis of Appellant's first assignment of error. My disagreement with the majority is to the legal ramification of such decision.

**{¶38}** Appellant was acquitted by the jury of felony murder and this Court, including myself, have concluded it was error to instruct the jury on voluntary manslaughter. I believe such conclusion requires reversal of Appellant's conviction of voluntary manslaughter, but not a remand for new trial.

**{¶39}** While I agree an improper jury instruction "normally" requires a reversal and remand for new trial, this is not the normal case. When a properly indicted charge or properly applicable inferior offense has been presented to the jury using an erroneous instruction related to that charge, and the error is deemed prejudicial, reversal and remand for new trial is the appropriate disposition. However, where, as in the case sub judice, the felony charge at issue (voluntary manslaughter) was never indicted by the grand jury and has been found not to be an inferior offense of the indicted felony (felony murder, R.C. 2903.02(B)), the error is giving an instruction on the charge in the first instance, not an internal error is the instruction itself.

**{¶40}** Because I find a new trial unnecessary, I also disagree with the majority's conclusion Appellant's second, third, and fourth assignments of error are premature and/or moot as they also pertain to Appellant's convictions on felonious assault with a firearm specification and improperly handling firearms in a motor vehicle. Those convictions are independent of our resolution of Appellant's first assignment of error.