[Cite as *State v. Williams*, 2021-Ohio-443.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | Case No. 2019CA00188 |
| CURTIS JAMES WILLIAMS | |
| Defendant-Appellant | O P I N IO N |


CHARACTER OF PROCEEDINGS:     Appeal from the Stark County Court of Common Pleas, Case No. 2018 CR 2314(B)

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     February 16, 2021

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
Prosecuting Attorney,
Stark County, Ohio

KATHLEEN O. TATARSKY
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South – Suite #510
Canton, Ohio 44702-1413

For Defendant-Appellant

AARON KOVALCHIK
116 Cleveland Avenue, N.W.
808 Courtyard Centre
Canton, Ohio 44702

*Hoffman, P.J.*

{¶1} Defendant-appellant Curtis James Williams appeals the judgment entered by the Stark County Common Pleas Court convicting him of one count of felony murder with a firearm specification (R.C. 2903.02(B), R.C. 2941.145) and three counts of felonious assault with firearm specifications (R.C. 2903.11(A)(1), (2), R.C. 2941.145), and sentencing him to an aggregate term of twenty-five years to life in prison. Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2} On December 14, 2018, Tameez Moore of Akron believed he lost a fight to Mitch Greenlief of Canton, and sought a rematch. Moore's girlfriend, who is also the sister of Greenlief and Appellant, organized the fight using social media. The fight was to be a one-on-one fistfight at the Madge Youtz Elementary School parking lot on December 15, 2018, around 6:30-7:00 p.m.

{¶3} Moore arranged for five of his friends from Akron and his brother to attend the fight, traveling from Akron to Canton in two vehicles. Everett Whitfield, Moore's mother's boyfriend, followed to look after the boys. Mitch Greenlief arranged for five of his Canton friends to attend, including Appellant. Moore and his group arrived in Canton, but after viewing the designated parking lot, they moved their vehicle to a parking spot on a nearby street. Moore saw the Canton group arrive near the top of a fence by the parking lot. The men in the Canton group were all dressed in black. Moore saw Appellant and Mitch Greenlief arrive on foot. Appellant's sister noticed Appellant came to the fight with a firearm behind his back. When she saw him with the gun, she pushed him away. He told her not to say his name, saying, "I don't fight, I shoot." Tr. II, 15; Tr. III, 12.

{¶4} Mitch threw his hat at Moore, and the pair squared up, readying for a fistfight. Before any punches were thrown, Whitfield saw one of the Canton group holding a gun behind his back, which was visible between his legs. Whitfield stopped the fight, saying, "This ain't no fight. If he got a gun it's – the fight is over." Tr. I, 308. Words were exchanged, with the Canton group calling the Akron men "bitches" and "pussies."

{¶5} The Akron group got in their cars. Moore, Donte Alexander, and Zohntai Walker got in Moore's vehicle. Alexander was seated in the back seat, behind the driver. Moore was parked on Midway Avenue headed north, and pulled out of the parking spot. He drove until he was next to Appellant's vehicle. Not familiar with his surroundings, he stopped the vehicle and pulled out his telephone to check the GPS. Alexander said, "They're about to start shooting," and the shooting began. Tr. I, 258.

{¶6} A bullet penetrated Alexander's neck. Moore dropped his phone and sped away, trying to find a hospital. Moore was blowing his horn and screaming when he saw a State Trooper on State Route 62. Trooper George Ksenich got out of his patrol car and saw Alexander in the back seat of Moore's vehicle, unresponsive and covered in blood. EMS arrived and Alexander was taken to Aultman Hospital, where he was pronounced dead. Police found a Hi-Point 9 mm handgun on the rear passenger seat with a full magazine and a bullet in the chamber.

{¶7} Canton Police Officer Zachary Taylor responded to a call about a shooting which occurred around Midway Avenue and 22nd Street. Officer Taylor found broken glass and a vehicle reflector in the road. He learned a black SUV which was involved in the shooting was parked in front of a residence at 2014 Midway. Taylor secured the scene. A shell casing from a .40 caliber Smith and Wesson handgun was found at the

scene, as well as several bullet holes in a champagne SUV. Taylor arranged a trash pull of the trash in front of 2014 Midway, where he found two more .40 caliber Smith and Wesson shell casings. Officer Taylor learned the owner of the black SUV was Appellant. Taylor found a pair of black North Face gloves in the residence. The left glove had gunshot residue on it, as well as Appellant's DNA.

{¶8} Moore's vehicle was examined by BCI investigators. The back window was completely knocked out and there were a total of six bullet holes in the rear area and driver's side mirror of the vehicle. There was no damage to the front of the vehicle. BCI experts determined the vehicle was moving at the time of the shooting, The investigation revealed three rounds were fired, followed by a pause, followed by three additional rounds fired.

{¶9} Appellant was indicted by the Stark County Grand Jury with one count of felony murder with felonious assault as the predicate offense, and three counts of felonious assault, all with firearm specifications. The case proceeded to jury trial in the Stark County Common Pleas Court.

{¶10} Prior to the third day of trial, the State notified the court it had received a letter written by Appellant to Mitch Greenlief, while both were housed at the Stark County Jail. The letter was found on the floor of the jail hallway. The trial court allowed the letter to be admitted into evidence through the testimony of a deputy sheriff employed at the jail.

{¶11} Appellant argued self-defense at trial. Appellant did not testify. Appellant presented the testimony of his brother, Christian Greenlief, in support of his defense. Christian testified during the fight, he heard one of the Akron men say, "I'm going to air

this bitch out," which meant he was going to start shooting. Tr. 3, 114.   The group dispersed.  Christian initially got into his vehicle with his girlfriend and daughter.  He then became concerned about his brothers because they were outnumbered by the Akron group.  He saw Moore's car "coming pretty fast," and believed either the Akron men wanted more conflict or something bad was about to happen.  Tr. 3, 119-120.  Christian exited his car and told his girlfriend to go home.  Moore's car slowed down enough to allow Christian to cross the street in front.  He noticed the rear driver's side window of Moore's vehicle was open, and the rear passenger window was rolling down.  He heard gunshots, got back in the car with his girlfriend, and left the scene.

{¶12} Following trial, Appellant was convicted on all counts.  The trial court merged one count of felonious assault and its accompanying firearm specification into the felony murder conviction, with the State electing to have Appellant sentenced on the murder conviction.  The trial court sentenced Appellant to 15 years to life for murder, with an additional three years on the firearm specification, to be served consecutively.  The trial court sentenced Appellant to four years incarceration for each count of felonious assault and an additional three years for each firearm specification.  The sentence for count three of felonious assault and its accompanying specification were to be served concurrently with the sentences for count two of felonious assault and its firearm specification.   The sentences for count two of felonious assault and its firearm specification were to be served consecutively with the murder sentence, for an aggregate sentence of 25 years to life in prison.

{¶13} It is from the September 26, 2019 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT, AND THE CONVICTION MUST BE REVERSED.

II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED.

III. THE TRIAL COURT PLAINLY ERRED BY FAILING TO PRESENT A JURY ON THE LESSER INCLUDED OFFENSES OF VOLUNTARY MANSLAUGHTER AND AGGRAVATED ASSAULT.

IV. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.

V. THE HANDWRITTEN LETTER FOUND IN THE HALLWAY OF THE STARK COUNTY JAIL AND ALLEGED TO HAVE BEEN WRITTEN BY APPELLANT WAS NOT PROPERLY AUTHENTICATED AND THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ALLOWING IT TO BE ENTERED INTO EVIDENCE.

I.

{¶14} In his first assignment of error, Appellant argues the State did not present sufficient evidence to prove beyond a reasonable doubt he did not shoot at Moore's vehicle in self-defense. He argues when Moore pulled his car next to Appellant's and stopped with the back-right passenger window rolled down, any objectively reasonable

person in Appellant's position would have believed Moore stopped next to Appellant's car in order to shoot at the occupants of Appellant's vehicle.  He argues it is reasonable to believe had he not acted in self-defense, he or another occupant of his vehicle would have been shot by the gun found inside Moore's vehicle through the rolled-down back passenger window.

**{¶15}**  An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶16}**  The elements of self-defense in the use of deadly force are: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief he was in imminent danger of death or great bodily harm and his only means of escape from such a danger was in the use of such force, and (3) the defendant did not violate any duty to retreat or avoid the danger. *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002).

**{¶17}**  Pursuant to R.C. 2901.05, if there is evidence presented at trial which tends to support a claim the defendant used force against another in self-defense or in defense of another, the State must prove beyond a reasonable doubt the defendant did not use the force in self-defense or defense of another. R.C. 2901.05(B)(1). Once the initial showing is made, the burden of persuasion requires the State to disprove at least one of the elements of self-defense (or defense of another) beyond a reasonable doubt. *State v.*

*Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 55 (3d Dist. Lake); *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31.

{¶18} In this case, the State does not contest there was evidence tending to show Appellant acted in self-defense or in defense of another. Therefore, the State was required to disprove self-defense involving deadly force by proving beyond a reasonable doubt Appellant either: (1) was at fault in creating the situation giving rise to the affray; or (2) did not have a bona fide belief he was in imminent danger of death or great bodily harm for which the use of deadly force was his only means of escape, or (3) violated a duty to retreat or avoid the danger. *Carney* at ¶ 31.

{¶19} The State need only disprove one of the elements of self-defense beyond a reasonable doubt. *State v. Williams*, 9th Dist. Summit No. 29444, 2020-Ohio-3269, ¶ 10. In reviewing a sufficiency of the evidence challenge involving self-defense, we must view the evidence in a light most favorable to the State, and determine whether any rational trier of fact could have found the State disproved at least one of the elements of self-defense beyond a reasonable doubt. *State v. Davis*, 10th Dist. Franklin No. 19AP-521, 2020-Ohio-4202, ¶ 27; State *v. Smith*, 1st Dist. Hamilton No. C-190507, 2020-Ohio-4976, ¶51.

{¶20} Viewing the evidence in a light most favorable to the State, we find the jury could reasonably have found Appellant was at fault for creating the situation leading to the shooting.  Appellant was invited to what was supposed to be a one-on-one fistfight involving Moore and Mitch Greenlief.  However, Appellant brought a firearm to the fight, which his sister testified he carried behind his back.  When the group from Akron saw the firearm, they left the fight.  There was testimony Moore got into his vehicle, pulled out of

a parking spot next to Appellant's vehicle, slowed down or stopped to check his GPS, and Appellant started shooting. Moore testified he did not see the vehicle in which Appellant arrived, he only saw Appellant and Mitch Greenlief walking to the parking lot. His testimony Appellant and Mitch Greenlief parked elsewhere and arrived on foot after the Akron men arrived is supported by the testimony of Zohntai Walker and Christian Greenlief. There is no evidence Moore knew Appellant owned the car he pulled next to, and no evidence of shots fired from Moore's vehicle. Although a loaded weapon was found in Moore's vehicle, police found the gun with a full magazine and one bullet in the chamber. Further, there was no evidence presented Appellant knew Alexander had a weapon in Moore's vehicle at the time it pulled alongside him. A reasonable trier of fact could have concluded Appellant created the situation giving rise to the shooting by coming to a fistfight with a gun, and using the gun on the group from Akron when they left the fight before a punch was thrown.

{¶21} Further, we find the jury could have concluded the State demonstrated Appellant did not have a bona fide belief of imminent danger. While Appellant argues he was in fear because Moore drove his vehicle and stopped next to Appellant's vehicle with the rear window down, Appellant did not testify at trial. Moore testified he was not familiar with Canton and slowed down to check his GPS. He testified he was unaware Alexander had a firearm in the backseat. Moore further testified he did not see the men from Canton arrive in their vehicle, which was supported by testimony of other witnesses Appellant and Mitch Greenlief arrived at the parking lot on foot, after the Akron men were already present. There was no evidence Appellant was aware Alexander had a gun in the backseat of Moore's vehicle. Appellant did not tell his sister shots were fired at him or he

was in fear. Rather, after the shooting he was afraid, pacing back and forth, saying, "[T[his is why he doesn't do things for people. He's always there for everybody, but when he needs someone no one is there." Tr. 2, 19. Further, the physical evidence demonstrated Moore's vehicle was moving when it was struck, and the damage was to the rear of Moore's vehicle and the driver's side mirror. There was evidence three shots were fired, followed by a pause, followed by three more shots. This evidence tends to demonstrate Moore's vehicle was leaving the area, yet Appellant continued to fire his weapon at Moore's vehicle.

{¶22} Christian Greenlief testified he heard someone from the Akron group at the fight say, "I'm going to air this bitch out." However, the evidence does not demonstrate Appellant heard this comment or it caused him to be fearful he was in imminent danger. Further, this comment was made prior to the group dispersing.

{¶23} In summary, we find a rational trier of fact could have found the State disproved at least one of the elements of self-defense beyond a reasonable doubt. The judgment is supported by sufficient evidence. The first assignment of error is overruled.

II.

{¶24} In his second assignment of error, Appellant argues the judgment is against the manifest weight of the evidence on his claim of self-defense. He argues the State's inability to explain a motive for the shooting other than self-defense weighs heavily in favor of acquittal.

{¶25} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses,

and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶26}** Motive is not an element of either murder or felonious assault, and the State was not required to prove motive. *See, e.g., State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578. However, evidence was presented Appellant had a motive other than self-defense. The testimony demonstrates animosity between the group from Canton and the group from Akron, with the Canton group saying, "Akron ----is pussies," and "Akron dudes are some bitches." Tr. I, 259, 309. In his letter to Greenlief found on the jail floor, Appellant stated Moore was putting his hands on Appellant's sister Kylee, disrespecting her, which was the reason for the fight. Appellant told his sister when he arrived at the parking lot with a gun, "I don't fight, I shoot." Tr. II, 24. From the evidence of the words exchanged and the letter found on the jail floor, the jury could have concluded Appellant had a motive for the shooting other than self-defense. We find the jury did not lose its way in rejecting the claim of self-defense, and the judgment is not against the manifest weight of the evidence.

**{¶27}** The second assignment of error is overruled.

III.

**{¶28}** In his third assignment of error, Appellant argues the trial court erred in failing to instruct the jury on the lesser-included offenses of voluntary manslaughter and aggravated assault.

**{¶29}** Appellant did not request the jury be instructed on voluntary manslaughter or aggravated assault. Therefore, we must find plain error in order to reverse.

**{¶30}** The Ohio Supreme Court has set forth the following standard of our review of plain error:

Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id.* We recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *Id.* at ¶ 22, *citing United States v. Dominguez Benitez*, 542 U.S. 74, 81–83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; we have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶31}** *State v. Thomas*, 2017-Ohio-8011, ¶¶ 32-34.

**{¶32}** Appellant first argues the trial court committed plain error in failing to instruct the jury on the offense of voluntary manslaughter as a lesser-included offense of felony murder. This court has previously held voluntary manslaughter is not a lesser-included offense of murder, nor is voluntary manslaughter an inferior-degree offense of felony murder. *State v. Cobb*, 5th Dist. Stark No. 2014CA00226, 2015-Ohio-2752, ¶12; *State v. Hawthorne*, 5th Dist. Stark No. 2019CA00055, 2020-Ohio-756, 145 N.E.3d 372, ¶29, *appeal not allowed*, 159 Ohio St.3d 1494, 2020-Ohio-4317, 152 N.E.3d 299. Therefore, we find the trial court did not commit plain error in failing to instruct the jury on the offense of voluntary manslaughter.

**{¶33}** Appellant also argues the trial court committed plain error in failing to instruct the jury on aggravated assault as a lesser-included or inferior-degree offense of felonious assault.

**{¶34}** Aggravated assault is defined by R.C. 2903.12:

(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:

(1) Cause serious physical harm to another[.]

**{¶35}** The elements of felonious assault are identical to the elements of aggravated assault, except for the mitigating element of passion or rage. *State v. Deem,* 40 Ohio St. 3d 205 (1988), paragraph four of the syllabus. Therefore, in a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury. *Id.*

Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time.

**{¶36}** *Id.* at paragraph 5 of the syllabus.

**{¶37}** In the instant case, the evidence does not demonstrate reasonably sufficient provocation caused by the victims, the occupants of Moore's vehicle, so as to require an

aggravated assault instruction. The evidence reflects the Akron group came to Canton for a fistfight between Mitch Greenlief and Moore. When Whitfield saw a member of the Canton group with a gun, the fight was called off and the group dispersed. Although Christian Greenlief testified he heard someone from the Akron group say he was going to "air this bitch out," there was no evidence Appellant heard this comment, or it came from one of the occupants in Moore's vehicle at the time of the shooting. There was no evidence the Akron group made any threatening gestures or exchanged any words with Appellant when Moore pulled his vehicle near Appellant's group on Midway Avenue.

**{¶38}** Further, Appellant presented a defense of self-defense, which is inconsistent with a jury instruction on aggravated assault. In most cases, an aggravated assault instruction is incompatible with an instruction on self-defense, so that both cannot be given together. *State v. Owens*, 5th Dist. Richland No. 2004-CA-87, 2005-Ohio-4402, ¶ 31, *citing State v. Beaver*, 119 Ohio App.3d 385, 397, 695 N.E.2d 332 (11th Dist. Trumbull, 1997). However, an aggravated assault instruction could be given in a self-defense case, where circumstances are such that the defendant exceeded the amount of force necessary for his defense, out of passion or rage. *Id.* There is no evidence in the record suggesting Appellant exceeded the amount of force necessary for his self-defense out of passion or rage.

**{¶39}** We find the trial court did not commit plain error in failing to instruct the jury on the inferior-degree offense of aggravated assault based on the evidence in the instant case.

**{¶40}** The third assignment of error is overruled.

IV.

{¶41} In his fourth assignment of error, Appellant argues his trial counsel was ineffective for failing to request instructions on the offenses of voluntary manslaughter and aggravated assault as lesser-included offenses of felony murder and felonious assault.

{¶42} A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, Appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

{¶43} As discussed in Appellant's third assignment of error, an instruction on voluntary manslaughter was not warranted because voluntary manslaughter is neither a lesser-included offense nor an inferior-degree offense of felony murder. Further, as discussed in Appellant's third assignment of error, the evidence did not warrant an instruction on aggravated assault as an inferior degree offense of felonious assault, and such instruction is inconsistent with Appellant's claim the shooting was in self-defense. Therefore, Appellant has not demonstrated a reasonable probability of a change in the outcome had counsel requested the jury be instructed on voluntary manslaughter and aggravated assault.

**{¶44}** The fourth assignment of error is overruled.

V.

**{¶45}** In his fifth assignment of error, Appellant argues the court erred in admitting the letter found on the jail floor because the State did not present sufficient evidence to authenticate the letter. He also argues the letter was unfairly prejudicial, and should have been excluded pursuant to Evid. R. 403(A).

**{¶46}** "A trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). An abuse of discretion is more than a mere error in judgment; it is a "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

**{¶47}** On September 18, 2019, the day before the final day of trial, a jailer at the Stark County Jail found a letter in the hallway of a unit housing Mitch Greenlief. Greenlief's duties at the jail included sweeping the hallway. The letter was written in pencil, and was unsigned. The letter discussed details of Appellant's trial and the events which took place on the day of the shooting:

Sup, it's not going too good so far. I don't have no witness on my behalf. Dude keep bringing me up being in all black, and saying I didn't have no right to self-defense, which I do. I just don't have nobody proving it. And so, at the moment, they don't believe that they blocked me in my truck. And they don't believe I yelled pull off twice. And then that Donte

had pulled out his gun at the school before I did, like, IDK.  How nobody saw it, maybe because he was in the back and it was dark.  But say you saw a gun at the school and window.  And we was all scared for our lives.  That I was trying to protect myself and you, Bro.  Trav not showing up SMH.  Not too many lies been told FR.  Just evidence that I did it….But the prosecutor making me look bad.  He's good at his job.  They don't believe that they fully stopped by my truck.  Kylee said that I said, quote, "I don't fight, I shoot." (SMH, rocked me).  But do you remember at the school, what me and Trav was yelling to you.  "Come on bro we out, they not trying to fight fair."  That's when dude pulled the gun out.  Head out the window, gun, object, just they stopped all the way.  Shit, head, gun, both don't matter, gun for sure though.  What I really said was, "If you shoot I'm going to shoot."  It's really over for me TBH.  I got the dip though good look, but shit, all I can say is I tried to leave.  But shit.  Pulled back up, what was I supposed to do?  I told my lawyer that I didn't know about the fight until 30 minutes before it happened.  He said, can anybody verify that, and I said, you could.  But I was really wearing the boots because it was raining and gloves because it was cold.  Had it on all day.  He trying to make something from nothing SMH, IDK.  Though, Bro, I'm probably going down smoking over Kylee.  Man, I hate how life is going RN.  But if the prosecutor asks you something you don't want to answer, just say you don't remember.  You probably won't remember half this shit, but it's worth a try.  I also told my lawyer that TJ be putting his hands on Kylee and disrespecting her, that's why you all fought.

And he also trying to say I had my face all the way covered like a mask, which I didn't.  Hood up, yeah, face covered, no.  Man, you a smart guy.  Hear me out, I need you.  You probably know what you're doing.  Be calm, circle.  Talk slow, take your time.  Max you could get is three years, but you'll just get papers.  Worse come to worse, a 90 to 180 day judicial.  So don't be nervous.  Don't get scared.  You're in the clear.  Read this a couple times like once an hour.  Seriously, try it.  Your mind will retain info better.  You're my last chance.  Oh, yeah, remember this.  It's not about what your statement says, it's about what the jury hears. No cap.  I can write you 50 things, 50 times, that doesn't mean you will remember them.  Try your best.  Don't just read this and fold it back up, study it.  Shit, even write my request down separately.  Anything that will help you remember.  I'm sending this at lunch, write back ASAP.  I'm out of paper, so I erase shit from them and then write again.  Love you, Bro, might be a long time after this we ever get to chill and bond again.  Good times, while it lasted.  TTYL.

{¶48}  Tr. 3, 78-84; State's Exhibit 26.

{¶49}  Appellant first argues the State failed to present evidence to properly authenticate the letter.  At trial, Appellant did not challenge the authentication of the letter:

MR. WILL:  I want to just clarify for the record, that I'm not objecting to authentication.  I'm simply renewing my objection as to the – just the

general content that is already presented. I'm—I'm not arguing that it's not

authenticated.

**{¶50}** Tr. 3, 76.

**{¶51}** We therefore must find plain error in order to reverse. Appellant bears the

burden to demonstrate plain error on the record, and must show "an error, i.e., a deviation

from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings." *State v.*

*Thomas*, 2017-Ohio-8011, ¶ 32, *citing State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d

1240 (2002). Even if the error is obvious, it must have affected substantial rights, meaning

the trial court's error must have affected the outcome of the trial. *Thomas* at ¶33. The

accused is required to demonstrate a reasonable probability the error resulted in

prejudice—the same deferential standard for reviewing ineffective assistance of counsel

claims. *Id.*

**{¶52}** Evid. R. 901 governs authentication and provides in pertinent part:

(A) **General Provision**. The requirement of authentication or

identification as a condition precedent to admissibility is satisfied by

evidence sufficient to support a finding that the matter in question is what

its proponent claims.

(B) **Illustrations**. By way of illustration only, and not by way of

limitation, the following are examples of authentication or identification

conforming with the requirements of this rule:

(4) *Distinctive Characteristics and the Like.* Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

**{¶53}** The purpose behind authentication is to connect the particular piece of evidence sought to be introduced to the facts in the case by giving some indication the evidence is relevant and reliable. *State v. Brown*, 151 Ohio App.3d 36, 2002-Ohio-5207, 783 N.E.2d 539, ¶ 35 (7th Dist. Mahoning). The ultimate decision on the weight to be given to the piece of evidence is left to the trier of fact. *Id.* " '[A] letter may be authenticated by evidence of its distinctive contents such as facts contained in the missive that only the writer may know.' " *Id.*, 2002–Ohio–5207 at ¶ 39, *citing State v. Chamberlain*, 8th Dist. Cuyahoga No. 58949, 1991 WL 144181, (July 25, 1991).

**{¶54}** In the instant case, the letter was found in the jail hallway where Mitch Greenlief worked sweeping the floors. The letter discusses in great detail what happened thus far in Appellant's trial, referring to specific witnesses by name. Although unsigned, the letter uses first person to refer to the defendant in the trial, who could only be Appellant. We find the State presented sufficient evidence to authenticate the letter, and the trial court did not commit plain error in admitting the letter as properly authenticated.

**{¶55}** Appellant also argues the trial court erred in admitting the letter pursuant to Evid. R. 403(A), which provides, "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Appellant argues the probative value of the letter was outweighed by the danger of unfair prejudice from its admission.

**{¶56}** Appellant raised a claim of self-defense at trial, a theory which the State was obligated to disprove.  The contents of the letter are probative of his veracity on the issue of self-defense.  While the letter is prejudicial, as it suggests consciousness of guilt as well as an attempt to influence a witness's testimony, such prejudice was not unfair, and did not outweigh the probative value of the letter.  We find the court did not err in admitting the letter over Appellant's Evid. R. 403(A) objection.

**{¶57}**  The fifth assignment of error is overruled.

**{¶58}**  The judgment of the Stark County Common Pleas Court is affirmed.


By: Hoffman, P.J.

Wise, John, .J.  and

Delaney, J. concur